FILED

2019 JUN 13 PM 3:01

CLERK U.S. DISTRI   T
CENTRAL DIST. OF
LOS ANGELES

BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. |
|---|---|
| Plaintiff, | INDICTMENT |
| v. | [18 U.S.C. § 371: Conspiracy to Fail to Maintain an Accurate Oil Record Book and to Defraud the United States; 33 U.S.C. § 1908(a), 33 C.F.R. §§ 151.25 (a), (d), (h): Failing to Maintain an Accurate Oil Record Book; 18 U.S.C. § 1519: Falsification of Records in Matter of Federal Administration; 18 U.S.C § 1512(b)(3): Witness Tampering; 18 U.S.C. § 1503: Obstruction of Justice; 18 U.S.C. § 2(b): Causing an Act to be Done] |
| CAPITAL SHIP MANAGEMENT CORP., IOAN LUCA, and IONEL SURLA, | |
| Defendants. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A.   THE SHIP

1.   The motor vessel known as *M/V CMA CGM AMAZON* (the "*AMAZON*") was a container ship bearing International Maritime Organization number 9706308 and was built in 2015.  The *AMAZON* was approximately 984 feet long, 96,424 gross tons, and sailed under the Liberian flag.

The *AMAZON* was owned by Dias Container Carrier S.A. and operated by defendant CAPITAL SHIP MANAGEMENT CORP. ("CAPITAL").

2.   The *AMAZON* transported cargo and other items worldwide, stopping in various ports in Asia, Egypt, Canada, and along both coasts of the United States, including the Port of Los Angeles, in Los Angeles County, within the Central District of California.

3.   The *AMAZON* was equipped with pollution control equipment called an Oily Water Separator that was intended to remove oil from engine room bilge water before the filtered water was discharged overboard.  The Oily Water Separator had an Oil Content Meter to ensure that only water containing less than 15 parts per million of oil was discharged to the sea.

4.   The *AMAZON* was also equipped with a Clean Drain Tank.  The Clean Drain Tank was designed to capture condensation from the air cooler of the ship's main engine.  Under normal operations, water entering the Clean Drain Tank should be free from any oil or oil residue.  The water in the Clean Drain Tank could be discharged overboard using the Clean Drain Tank Pump.  Like the Oily Water Separator, the Clean Drain Tank Pump was also designed to use an Oil Content Meter to ensure that only water containing less than 15 parts per million of oil was discharged to the sea.  If the Oil Content Meter detected water containing 15 parts per million or more of oil, then an alarm would sound and the system would divert the flow to the Bilge Holding Tank rather than discharging the material overboard.

B.   THE DEFENDANTS AND RELATED PARTIES

5.   Defendant CAPITAL was the corporate entity responsible for the operation of the *AMAZON*, which included the hiring, training, and

2

supervision of the officers, crew members, and employees who worked on the ship.

6.   Defendant IOAN LUCA served as the Chief Engineer aboard the *AMAZON* from approximately October 10, 2018, until approximately January 26, 2019, and was in charge of all operations, maintenance, and work in the engine room, including oversight of the disposal of oily waste, as well as the engine room crew, aboard the *AMAZON*.

7.   Defendant IONEL SURLA served as the Chief Engineer on the *AMAZON* preceding the employment of defendant LUCA, and he worked on the *AMAZON* starting on or about May 30, 2018, through approximately October 11, 2018.  During his term as Chief Engineer, defendant SURLA was in charge of all operations, maintenance, and work in the engine room, including oversight of the disposal of oily waste, as well as the engine room crew, aboard the *AMAZON*.

8.   Unindicted Co-conspirator 1 (the "Second Engineer") served as the Second Engineer aboard the *AMAZON* starting on or about November 4, 2018, and in that position he worked in the *AMAZON*'s engine room and had oversight over various lower-level engine room crew members.

9.   Unindicted Co-conspirator 2 ("Fourth Engineer 1") served as the Fourth Engineer aboard the *AMAZON* starting on or about August 14, 2018, through approximately January 26, 2019, and he acted pursuant to the directions of defendants LUCA and SURLA and the Second Engineer.  Fourth Engineer 1 was also responsible for supervising the activities of three Oilers in the engine room who were lower in the *AMAZON*'s chain of command.

10.   Unindicted Co-conspirator 3 ("Fourth Engineer 2") was the Fourth Engineer who preceded Fourth Engineer 1 in service on the

*AMAZON*, and he boarded the ship no later than early July 2018. Fourth Engineer 2 initially showed Fourth Engineer 1 how to dispose of oily waste on the *AMAZON*, including oily waste that had accumulated in the bilge wells, when Fourth Engineer 1 came aboard on or about August 14, 2018.

11.   Unindicted Employee 4 ("Oiler 1") was an Oiler who boarded the *AMAZON* in early July 2018 and worked in the engine room of the *AMAZON*.  Oiler 1 was involved in the transfer of oily waste generated through the operation of the *AMAZON* and also played a role in cleaning up some of the leaked fuel oil as it accumulated on the ship.  Oiler 1 acted pursuant to instructions, both direct and indirect, provided to him by defendants LUCA and SURLA, the Second Engineer, and Fourth Engineers 1 and 2.

12.   Unindicted Employee 5 ("Oiler 2") was an Oiler who boarded the *AMAZON* in around July 2018.  Oiler 2 was involved in the transfer of oily waste generated through the operation of the *AMAZON* and also played a role in cleaning up some of the leaked fuel oil as it accumulated on the ship. Oiler 2 acted pursuant to the instructions, both direct and indirect, provided to him by defendants LUCA and SURLA, the Second Engineer, and Fourth Engineers 1 and 2.

13.   Unindicted Employee 6 ("Oiler 3") was an Oiler who boarded the *AMAZON* in around July 2018.  Oiler 3 was involved in the transfer of oily waste generated through the operation of the *AMAZON* and also played a role in cleaning up some of the leaked fuel oil as it accumulated on the ship.  Oiler 3 acted pursuant to the instructions, both direct and indirect, provided to him by defendants LUCA and SURLA, the Second Engineer, and Fourth Engineers 1 and 2.

Case 2:19-cr-00354-FMO   Document 41   Filed 06/13/19   Page 5 of 20   Page ID #:139

C.    STATUTORY AND REGULATORY OVERVIEW

14.    The International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (the "MARPOL Protocol"), was an international treaty that regulated discharges of oil from vessels at sea.  The MARPOL Protocol was enacted into United States law by the Act to Prevent Pollution from Ships ("APPS"), Title 33, United States Code, Sections 1901, et seq.

15.    APPS and the MARPOL Protocol prohibited ships from discharging oil or oily mixtures into the sea unless certain conditions were met.  One condition was that the effluent being discharged from a ship into the sea must contain less than 15 parts per million of oil.  33 C.F.R. § 151.10(a).

16.    APPS and the MARPOL Protocol also required that ships use equipment to prevent the discharge of a mixture containing more than the legally permitted amount of oil, such as an Oily Water Separator. Typically, when a sensor on an Oily Water Separator detected more than the allowable parts per million of oil, it would redirect the effluent to a storage tank on board the ship.

17.    Under APPS and the MARPOL Protocol, each ship that was 400 gross tons or more was required to maintain a record known as an Oil Record Book.  33 C.F.R. § 151.25(a).

18.    In the ship's Oil Record Book, the ship's crew was required to fully record, without delay: (a) disposals of oil residue, and (b) discharges overboard or disposal otherwise of bilge water that has accumulated in machinery spaces.  33 C.F.R. §§ 151.25(d), (h).

19.    In the event of an emergency, accidental, or other exceptional discharge of oil or an oily mixture, the ship's crew was required to make a statement in the Oil Record Book of the

5

circumstances of, and the reasons for, the discharge.  33 C.F.R.
§ 151.25(g).

20.  Each completed operation recorded in the Oil Record Book
must have been signed by the person or persons in charge of the
operations concerned, and each completed page in the Oil Record Book
must have been signed by the master of the ship or other person
having charge of the ship.  33 C.F.R. § 151.25(h).

21.  The master or other person having charge of a ship required
to keep an Oil Record Book was responsible for the maintenance of
such record.  33 C.F.R. § 151.25(j).

22.  The Oil Record Book was required to be maintained on board
the ship for not less than three years and to be kept readily
available for inspection by the United States Coast Guard at all
reasonable times.  33 C.F.R. §§ 151.25(i), (k).

23.  The United States Coast Guard, an agency of the United
States Department of Homeland Security, was charged with enforcing
the laws of the United States and was empowered under 14 U.S.C. § 522
to board ships and conduct inspections and investigations of
potential violations of international and United States law,
including the MARPOL Protocol and APPS.  In conducting inspections,
commonly known as Port State Control Inspections, Coast Guard
personnel relied on the statements of the ship's crew and documents,
including information contained in the Oil Record Book.

24.  The United States Coast Guard was specifically authorized
to examine the ship's Oil Record Book to determine, among other
things, whether the ship has operable pollution prevention equipment
and appropriate procedures, whether it poses any danger to United
States' ports and waters, and whether the ship has discharged any oil

6

1  or oily mixtures in violation of the MARPOL Protocol, APPS, or any

2  applicable federal regulations.   33 C.F.R. §§ 151.23(a)(3) and (c).

3      25.   In conducting inspections and investigations, Coast Guard

4  personnel also relied on the statements of the ship's crew as well as

5  documents, including the Oil Record Book.

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

1.   The Grand Jury re-alleges and incorporates paragraphs 1 through 24 of the Introductory Allegations here.

A.   THE OBJECTS OF THE CONSPIRACY

2.   Beginning on an unknown date, but no later than in or about July 2018, and continuing through on or about January 11, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendants CAPITAL, LUCA, and SURLA, and the Second Engineer, Fourth Engineer 1, and Fourth Engineer 2, assisted by Oiler 1, Oiler 2, and Oiler 3, together with others known and unknown to the Grand Jury, conspired: (1) to fail, and to willfully cause the failure, to maintain an accurate oil record book, in violation of Title 33, United States Code, Section 1908(a), Title 33, Code of Federal Regulations, Sections 151.25(a), (d), and (h), and Title 18, United States Code, Section 2(b); and (2) to defraud the United States and its agencies thereof, that is, to hamper, hinder, impede, impair, and obstruct by craft, trickery, deceit, and dishonest means, the lawful and legitimate functions of the United States Coast Guard in investigating and enforcing federal laws and regulations related to Port State Control Inspections and the discharge of oil from a ship.

B.   THE MANNER AND MEANS OF THE CONSPIRACY

3.   The objects of the conspiracy were carried out, and were to be carried out, in substance, as follows:

     a.   As the Chief Engineers on the *AMAZON*, defendants LUCA and SURLA would be principally responsible for operations,

8

maintenance, and work in the engine room on the *AMAZON*, and in
exercising their duties they were acting at all relevant times within
the scope of their employment for their employer, defendant CAPITAL.
The Second Engineer and Fourth Engineers 1 and 2, respectively, would
be secondarily responsible for the proper operation, maintenance, and
work in the engine room of the *AMAZON*, and in exercising their duties
they were also acting at all relevant times within the scope of their
employment for their employer, defendant CAPITAL.

b.   Defendants LUCA and SURLA, and the Second Engineer and
Fourth Engineers 1 and 2, were experienced seamen.  They were
professionally licensed and had been trained in the prevention of
pollution of the maritime environment.  Defendants LUCA and SURLA,
and the Second Engineer and Fourth Engineers 1 and 2, were familiar
with the proper operation and use of the Clean Drain Tank, Oily Water
Separator, and related equipment on the *AMAZON.*

c.   As part of the normal course and scope of their duties
on the *AMAZON*, defendants LUCA and SURLA, and the Second Engineer and
Fourth Engineers 1 and 2, would know that all disposals of oil
residues and discharges overboard or disposals otherwise of bilge
water that had accumulated in machinery spaces, among other things,
must be fully and accurately recorded in the ship's Oil Record Book.
The Oil Record Book could then be reviewed by the United States Coast
Guard upon arrival at a port in the United States.

d.   The *AMAZON* was equipped with an Oily Water Separator.
Before any oily material that collected in the ship's bilge wells
could be discharged overboard to the ocean, the oil-contaminated
water was required to be filtered using the ship's Oily Water
Separator.  The Oily Water Separator had filters that removed oil

from the bilge water, and used an Oil Content Meter to ensure that only water containing less than 15 parts per million of oil was discharged to the sea.  The *AMAZON*'s officers and crew were required to pass bilge water through the Oily Water Separator before discharging it overboard to ensure that only water containing less than 15 parts per million of oil was discharged to the sea.

e.   Notwithstanding this requirement, defendants LUCA and SURLA, and the Second Engineer and Fourth Engineers 1 and 2, would knowingly and deliberately take steps to circumvent use of the Oily Water Separator.  Instead of using the Oily Water Separator in the prescribed manner, defendants LUCA and SURLA, and the Second Engineer and Fourth Engineers 1 and 2, would direct, supervise, and in some instances help implement, the pumping of oil-contaminated water directly from the bilge wells to the Clean Drain Tank and then directly out to sea, without first filtering the material or removing the oil, thereby resulting in repeated illegal overboard discharges of oil-contaminated water.

f.   This re-routing of oil-contaminated water from the bilge wells to the Clean Drain Tank and then overboard would be deliberately designed to make it appear that only properly filtered clean water, and not oil-contaminated water, was being discharged overboard from the *AMAZON*, when in fact, as defendants LUCA, SURLA and CAPITAL then knew, this was not the case.

g.   In order to conduct the overboard discharges of oil-contaminated water directly from the Clean Drain Tank and to avoid any transfers of this oil-contaminated water to the Bilge Holding Tank, defendants LUCA and SURLA, working with the Second Engineer and Fourth Engineers 1 and 2, would devise a method to trick the Oil

10

Content Meter on the Clean Drain Tank Pump by flushing the Oil Content Meter with fresh water.  The periodic introduction of fresh water into the Oil Content Meter would prevent it from sounding an alarm and facilitated the discharge overboard of the oil-contaminated water from the Clean Drain Tank.

h.   In implementing their scheme to discharge oil-contaminated water overboard, defendants LUCA and SURLA, acting in conjunction with the Second Engineer and Fourth Engineers 1 and 2, would instruct and assist Oilers 1, 2, and 3 working in the engine room to utilize hoses and a portable pneumatic pump to transfer oil-contaminated bilge water from the *AMAZON*'s bilge wells to the Clean Drain Tank.

i.   While acting within the normal course and scope of their duties, as the bilge wells filled with oil-contaminated water, defendants LUCA and SURLA would order and direct the Second Engineer and Fourth Engineers 1 and 2 (who then derivatively instructed Oilers 1, 2, and 3) to pump the oil-contaminated water out of the bilge wells, knowing that the oil-contaminated bilge water would be improperly transferred to the Clean Drain Tank and then discharged overboard.  The transfers would be accomplished using hoses and a portable pneumatic pump.

j.   Before the *AMAZON* arrived at a port on its voyage during the relevant time period, defendant LUCA and the Second Engineer would direct Fourth Engineers 1 and 2 and Oilers 1, 2, and 3 to hide the portable pump and hoses used to transfer oily water from the bilge wells to the Clean Drain Tank by placing the pump and hoses in a workshop or spare storage room, so that the pump and hoses would not be visible to authorities in the event of an inspection.

11

Defendant LUCA would also instruct Fourth Engineer 1 not to conduct any transfers of oily water from the bilge wells to the Clean Drain Tank while near or in United States waters.

       k.   The oil-contaminated water that was transferred from engine room bilge wells to the Clean Drain Tank would ultimately be discharged overboard on a regular basis, continuing multiple times a month from approximately July 2018 through approximately December 2018.  None of the illegal overboard discharges of oil-contaminated water would ever be recorded in *the AMAZON*'s Oil Record Book by defendants LUCA or SURLA, or by any other officer or crew member aboard the *AMAZON*, as required by law.

       l.   The falsified and inaccurate Oil Record Book would be presented to the United States Coast Guard in various ports, including the Port of Los Angeles, within the Central District of California, on or about January 11, 2019.

       m.   When the *AMAZON* came into the Port of Los Angeles in or about January 11, 2019, and the United States Coast Guard started interviewing *AMAZON* crew members about the handling of oily waste in the *AMAZON's* engine room, defendant LUCA would instruct Fourth Engineer 1 to lie about the *AMAZON*'s handling of the transfers of oil-contaminated water from the bilge wells to the Clean Drain Tank.

C.   OVERT ACTS

    4.   On or about the following dates, in furtherance of the conspiracy, and to accomplish its objects, defendants LUCA, SURLA, and CAPITAL, and Second Engineer and Fourth Engineers 1 and 2, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

1       <u>Overt Act No. 1:</u>   In or about July 2018, Fourth Engineer 2 and

2   Oiler 1 set up hoses and pumps on the *AMAZON* in order to conduct

3   transfers of oil-contaminated water from the bilge wells into the

4   Clean Drain Tank.

5       <u>Overt Act No. 2:</u>   In or about July 2018, when Oiler 3 asked

6   Fourth Engineer 2 why the engineers of the *AMAZON* were directing

7   abnormal transfers of oil-contaminated water from the bilge wells to

8   the Clean Drain Tank, Fourth Engineer 2 stated that SURLA did not

9   want to dirty the Bilge Holding Tank or the Oily Water Separator

10  filter.

11      <u>Overt Act No. 3:</u>   In or about the second half of August 2018,

12  Fourth Engineer 1 discussed with defendant SURLA the pumping of oil-

13  contaminated water from the bilge wells to the Clean Drain Tank.

14      <u>Overt Act No. 4:</u>   In or about August 2018, Fourth Engineer 2

15  ordered Oiler 2 to set up hoses and a pump in order to transfer oil-

16  contaminated water from the bilge wells to the Clean Drain Tank.

17      <u>Overt Act No. 5:</u>   In or about September 2018, Fourth Engineer

18  1 instructed Oiler 1 to set up a pumping system to transfer oil-

19  contaminated water from the bilge wells to the Clean Drain Tank.

20      <u>Overt Act No. 6:</u>   In or about September 2018, Fourth Engineer

21  1 caused oil-contaminated water from the Clean Drain Tank of the

22  *AMAZON* to be pumped overboard.

23      <u>Overt Act No. 7:</u>   In or about October 2018, defendant LUCA

24  instructed Fourth Engineer 1 to set up the arrangement of hoses and a

25  pump in order to conduct transfers of oil-contaminated water from the

26  bilge wells to the Clean Drain Tank.

27      <u>Overt Act No. 8:</u>   In or about October 2018, Fourth Engineer 1

28  poured fresh mineral water into the Oil Content Meter on the Clean

Drain Tank Pump in order to prevent the Oil Content Meter alarm from sounding, indicating the presence of oil in the water passing through the Clean Drain Tank Pump.

Overt Act No. 9:   In or about November 2018, Fourth Engineer 1 had a discussion with defendant LUCA about pumping oil-contaminated water into the Clean Drain Tank.

Overt Act No. 10:   In or about November 2018, Fourth Engineer 1 had a discussion with defendant LUCA about discharging overboard oil-contaminated water from the Clean Drain Tank.

Overt Act No. 11:   In or about November 2018, defendant LUCA omitted recording in the Oil Record Book an overboard discharge of oil-contaminated water from the *AMAZON*, as required by law, despite the fact that oil-contaminated water was transferred from the bilge wells to the Clean Drain Tank and then overboard on more than one occasion in November 2018.

Overt Act No. 12:   In or about December 2018, defendant LUCA ordered Fourth Engineer 1 to transfer oil-contaminated water from the bilge wells to the Clean Drain Tank and then pump the transferred oil-contaminated water overboard.

Overt Act No. 13:   In or about December 2018, the Second Engineer ordered various crew members to pump oil-contaminated water out of the bilge wells, knowing that the oily bilge water would be improperly transferred to the Clean Drain Tank, then pumped overboard.

Overt Act No. 14:   In or about December 2018, as the *AMAZON* approached various ports, the Second Engineer instructed various crew members, including Oiler 3, to put away the hoses and pump that were

used to transfer oily water from the bilge wells to the Clean Drain
Tank so that they would not be visible in the event of an inspection.

Overt Act No. 15:    In or about December 2018, defendant LUCA
omitted recording in the Oil Record Book an overboard discharge of
oil-contaminated water from the *AMAZON*, as required by law, despite
the fact that oil-contaminated water was transferred from the bilge
wells to the Clean Drain Tank and then overboard on more than one
occasion in December 2018.

Overt Act No. 16:    On or about January 11, 2019, defendant LUCA
and the Second Engineer caused a falsified and inaccurate Oil Record
Book to be presented to the United States Coast Guard that
deliberately omitted entries to reflect the illegal overboard
discharge of oil-contaminated water from the *AMAZON*.

Overt Act No. 17:    On or about January 11, 2019, defendant LUCA
instructed Fourth Engineer 1 to report falsely to the United States
Coast Guard that the only water in the Clean Drain Tank was
condensation from the Main Engine's air cooler.

15

COUNT TWO

[33 U.S.C. § 1908(a); 33 C.F.R. §§ 151.25 (a), (d), (h);

18 U.S.C. § 2(b)]

[ALL DEFENDANTS]

1.   The Grand Jury re-alleges and incorporates paragraphs 1 through 24 of the Introductory Allegations and paragraphs 3 and 4 of Count One here.

2.   Starting as early as in or about July 2018, and continuing until or about January 11, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendants CAPITAL, LUCA, and SURLA, the operator and Chief Engineers of the *AMAZON*, a container ship greater than 400 gross tons, knowingly failed to maintain, and willfully caused others to fail to maintain, the Oil Record Book aboard the *AMAZON* in which all disposals of oil residues and discharges overboard or disposals otherwise of bilge water that had accumulated in machinery spaces were required to be fully and accurately recorded.  Specifically, from in or about July 2018 through in or about December 2018, defendants CAPITAL, LUCA, and SURLA, acting within the course and scope of their employment, and with the intent to benefit their employer at least in part, knowingly failed to fully and accurately record, and willfully caused others to fail to fully and accurately record, in the *AMAZON*'s Oil Record Book, disposals and overboard discharges of oily water from the engine room bilge wells, machinery spaces, and Clean Drain Tank, and caused that inaccurate Oil Record Book to be presented to the United States Coast Guard in the Port of Los Angeles on or about January 11, 2019, all in violation of 33 C.F.R. §§ 151.25 (a), (d), and (h).

                                COUNT THREE

                    [18 U.S.C. § 1519; 18 U.S.C. § 2(b)]

                     [DEFENDANTS CAPITAL AND LUCA]

     1.   The Grand Jury re-alleges and incorporates paragraphs 1
through 24 of the Introductory Allegations and paragraphs 3 and 4 of
Count One here.

     2.   Starting as early as in or about July 2018 and continuing
until on or about January 11, 2019, in Los Angeles County, within the
Central District of California, and elsewhere, defendants LUCA and
CAPITAL, acting through the conduct of its employees, knowingly
concealed, covered up, falsified, and made a false entry, and
willfully caused the concealing and covering up of facts and
willfully caused false entries to be made in a record and document,
with the intent to impede, obstruct, and influence the investigation
and proper administration of a matter within the jurisdiction of the
United States Coast Guard.  Specifically, defendant LUCA, acting
within the course and scope of his employment, and with the intent to
benefit his employer at least in part, knowingly failed to fully and
accurately record and maintain and concealed and covered up, and
willfully caused others to fail to fully and accurately record and
maintain and to conceal and cover up, required entries in the
*AMAZON*'s Oil Record Book, including disposals and overboard
discharges of oily water from the engine room bilge wells, machinery
spaces, and Clean Drain Tank, and knowingly presented this falsified
Oil Record Book to the United States Coast Guard in the Port of Los
Angeles on or about January 11, 2019.

                                    17

COUNT FOUR

[18 U.S.C. § 1512(b)(3)]

[DEFENDANTS CAPITAL AND LUCA]

1.   The Grand Jury re-alleges and incorporates paragraphs 1 through 24 of the Introductory Allegations here.

2.   On or about January 11, 2019, in Los Angeles County, within the Central District of California, defendants LUCA and CAPITAL, acting through the conduct of its employee, defendant LUCA, knowingly and with the intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information related to the commission or possible commission of a Federal offense, attempted to corruptly persuade another person, namely, Fourth Engineer 1.   Specifically, defendant LUCA, acting as the Chief Engineer of the *AMAZON*, instructed Fourth Engineer 1 to falsely report to the United States Coast Guard that the only water in the Clean Drain Tank was condensation from the Main Engine's air cooler when in fact, as defendant LUCA then knew, the Clean Drain Tank contained oil-contaminated bilge water from the engine room bilge wells.

COUNT FIVE

[18 U.S.C. § 1503]

[DEFENDANTS CAPITAL AND LUCA]

1.    The Grand Jury re-alleges and incorporates paragraphs 1 through 24 of the Introductory Allegations here.

2.    On or about January 11, 2019, in Los Angeles County, within the Central District of California, defendants LUCA and CAPITAL, acting through the conduct of its employee, defendant LUCA, knowingly and with the intent to obstruct justice, corruptly endeavored to influence, obstruct, and impede the due administration of justice. Specifically, defendant LUCA, acting as the Chief Engineer of the *AMAZON*, directed Oilers 2 and 3 to falsely report to the United States Coast Guard that they had extracted only 200 to 300 liters of leaked fuel oil from the duct keel of the *AMAZON* in cleaning up a

//

//

//

//

//

//

//

//

//

//

//

//

//

//

1  fuel leak, when in fact, as defendant LUCA then knew, the amount of

2  leaked fuel oil at issue was substantially greater than that amount.

3

4                                        A TRUE BILL

5

6                                        _/S/_____

7                                        Foreperson

8  NICOLA T. HANNA
   United States Attorney
9

10 Scott M. Garringer
   Deputy Chief, Criminal Division For:
11
   BRANDON D. FOX
12 Assistant United States Attorney
   Chief, Criminal Division
13
   JOSEPH O. JOHNS
14 Assistant United States Attorney
   Chief, Environmental and
15    Community Safety Crimes
      Section
16
   MARK A. WILLIAMS
17 Assistant United States Attorney
   Deputy Chief, Environmental and
18    Community Safety Crimes
      Section
19
   PAUL G. STERN
20 Assistant United States Attorney
   Senior Trial Attorney
21 Environmental and Community
      Safety Crimes Section
22
   ERIK M. SILBER
23 Assistant United States Attorney
   Environmental and Community
24    Safety Crimes Section

25 HEATHER C. GORMAN
   Assistant United States Attorney
26 Environmental and Community
      Safety Crimes Section
27

28